EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Kevin J. Nieves Cabán<br><br>Peticionario | 2019 TSPR 33<br><br>201 DPR \_\_\_\_<br><br>Certiorari |

Número del Caso:  CC-2017-630

Fecha: 20 de febrero de 2019

Tribunal de Apelaciones:

Mayagüez-Aguadilla, Panel XI

Abogado de la parte peticionaria:

Lcdo. Roland Arroyo Rojas

Oficina del Procurador General:

Ldo. Luis Román Negrón
Procurador General

Lcda. Laura W. Robles Vega
Procuradora General Auxiliar

Materia:  Derecho Probatorio: Art. 5.04 de la Ley de Armas. Aplicación de presunción de la ilegalidad de portación de armas en etapa de vista preliminar.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| El Pueblo de Puerto Rico | |
|---|---|
| Recurrido | |
| v. | CC-2017-0630 |
| Kevin J. Nieves Cabán | |
| Peticionario | |

**El Juez Asociado señor RIVERA GARCÍA emitió la opinión del Tribunal.**

En San Juan, Puerto Rico, a 20 de febrero de 2019.

¿Puede el tribunal encontrar causa probable para juicio por violación al Art. 5.04 de la Ley de Armas, *infra,* al hacer una inferencia o aplicar una presunción de portación ilegal de un arma de fuego? Contestamos esta interrogante en la afirmativa. Como consecuencia, confirmamos el dictamen recurrido.

A continuación exponemos los antecedentes fácticos que dieron origen a la controversia ante nuestra consideración.

I

El Sr. Kevin J. Nieves Cabán (señor Nieves Cabán o peticionario) fue denunciado por presuntamente cometer los delitos de asesinato en primer grado, tentativa de asesinato en primer grado y violar los Arts. 5.04 y 5.15 de la *Ley de Armas de Puerto Rico* (Ley de Armas), Ley 404-2000, según enmendada, 25 LPRA secs. 458c y 458n, respectivamente. En cuanto a la denuncia por la violación al Art. 5.04 de la Ley

de Armas de Puerto Rico, el Ministerio Público alegó lo

siguiente:

> El referido imputado de delito Kevin J. Nieves
> Cabán, allá en o para el 13 de diciembre de 2014 y
> en Aguada; Puerto Rico, que forma parte de la
> jurisdicción del Tribunal de Primera Instancia,
> Sala de Aguadilla, ilegal, voluntaria, y
> criminalmente en común y mutuo acuerdo con OMAR
> PEREZ TOMASINI, usó, transportó y/o portó un arma
> de fuego, una pistola, color negra, con intención
> de cometer delito y/o la cual se utilizó para
> cometer los delitos de Asesinato, Tentativa de
> asesinato y Artículo 5.15 de la ley de armas.

Celebrada la vista preliminar, el juez determinó causa

probable para acusar por todos los delitos. Así las cosas, el

Ministerio Público presentó los pliegos acusatorios

correspondientes. En lo que respecta a la acusación por

infringir el Art. 5.04 de la Ley de Armas, se imputaron los

hechos siguientes:

> El referido imputado de delito KEVIN J. NIEVES
> CABÁN, allá en o para el día 13 de diciembre de
> 2014 y en Aguada[,] Puerto Rico, que forma parte de
> la jurisdicción del Tribunal de Primera Instancia,
> Sala de Aguadilla, ilegal, voluntaria, y
> criminalmente en común y mutuo acuerdo con OMAR
> PÉREZ TOMASINI, portaba, conducía y transportaba un
> arma de fuego cargada, sin tener una licencia de
> armas, ni el correspondiente permiso para portar
> armas, siendo dicha arma de fuego una arma con la
> cual puede causarse grave daño corporal y la cual
> se utilizó en la comisión del delito de Asesinato
> y [sic] [i]nf[racción al] Art. 5.15 de la [L]ey de
> Armas con la cual se le causó daño físico que le
> causó la muerte al Sr. Ángel Col[ó]n Martínez y se
> utilizó en la comisión de tentativa de asesinato e
> [i]nfr[acción al] Art. 5.15 de la [L]ey de [A]rmas,
> con la cual se le causó daño físico a Osvaldo Ruiz
> Rodríguez.

No conteste con la acusación, el señor Nieves Cabán

presentó una *Moción de desestimación bajo la[s] Regla[s]*

*64(I) y 64(P) de Procedimiento Criminal y el debido proceso*

*de ley.* Planteó ausencia total de prueba en cuanto a uno de los elementos del delito. Alegó que el Estado no pasó prueba sobre la carencia de una licencia o permiso para portar el arma de fuego.

Por su parte, el Ministerio Fiscal se opuso a la solicitud de desestimación. Arguyó, entre otras cosas, que en los casos de portación de armas de fuego el fiscal no viene obligado a probar que el imputado no tenía licencia cuando alegó ese hecho en la acusación y probó la portación o posesión del arma. Adujo que de estos elementos surge la presunción de portación o posesión ilegal, por lo que correspondía al peticionario destruir esta presunción. Sostuvo que el señor Nieves Cabán, como promovente de la moción de desestimación, no había establecido que en la vista preliminar hubo ausencia total de prueba que permitiera hacer una determinación de causa probable para juicio por el Art. 5.04 de la Ley de Armas. Señaló que en esta etapa no era necesario que se presentara toda la evidencia que el Ministerio Público desfilaría en el juicio, sino que podía presentar solo aquella necesaria para establecer la conexión del acusado con el delito imputado y los elementos del delito. Alegó que presentar prueba de que, en efecto, no estaba autorizado a portar un arma de fuego o de que no tenía licencia para ello, no es parte del proceso de la vista preliminar.

Evaluados los planteamientos de las partes —los cuales se sometieron por escrito, pues las partes y el tribunal

entendieron que la controversia se circunscribía a un asunto de derecho— el tribunal de instancia declaró no ha lugar la moción de desestimación. Resolvió que el Ministerio Público no viene obligado a probar que el señor Nieves Cabán no tenía licencia, ya que este hecho lo alegó en la acusación y, además, probó que el señor Nieves portaba el arma de fuego. En síntesis, concluyó que de ello surge la presunción de portación ilegal del arma y era al peticionario a quien incumbía destruir tal presunción.

Inconforme, el señor Nieves Cabán presentó un recurso de *certiorari* ante el Tribunal de Apelaciones en el cual solicitó la revisión de la Resolución emitida por el Tribunal de Primera Instancia. Señaló que el foro primario erró al determinar que el Ministerio Público no estaba obligado a evidenciar que no tiene licencia o permiso para portar el arma. Así, en esencia, esbozó los mismos argumentos que en el tribunal de instancia.

En ese contexto, el Tribunal de Apelaciones expidió el auto solicitado y requirió a las partes sendos alegatos en los que debían discutir varios asuntos. En particular, el foro intermedio ordenó que se expresaran en cuanto a si la presunción de ilegalidad de la portación o posesión del arma de fuego tiene el efecto de invertir el peso de la prueba en el caso y si la presunción de ilegalidad es congruente con la Segunda Enmienda de la Constitución Federal. De igual manera, ordenó a las partes a que abordaran si esta presunción afectaba el derecho a la presunción de inocencia, y si la

obligación del acusado de presentar evidencia de que posee una licencia infringe su derecho a guardar silencio. Finalmente, requirió que se expresaran respecto a si la presunción de ilegalidad en la portación había sido adoptada en algún estado de Estados Unidos.

Luego de recibir los alegatos de las partes, el Tribunal de Apelaciones emitió una Sentencia en la cual revocó la determinación de foro primario. Razonó que la presunción de ilegalidad que se estableció en *Pueblo v. Pacheco Ruiz,* 78 DPR 24 (1955), era inconstitucional. Concluyó que era contraria a la presunción de inocencia y que el Pueblo no había presentado prueba en la vista preliminar sobre la ilegalidad de la portación del arma de fuego.

Oportunamente el Ministerio Público solicitó que el dictamen fuera reconsiderado. Así lo hizo el foro apelativo intermedio. En esencia, este resolvió que, en virtud de la autolimitación judicial, se había precipitado al declarar inconstitucional la inferencia sobre la ilegalidad de la portación. Coligió que el Art. 5.04 de la Ley de Armas establece una presunción permisible de posesión no autorizada de un arma de fuego, mas no es una inferencia concluyente. Expresó que a nivel de vista preliminar, donde la responsabilidad penal se establece a base de un cálculo de probabilidades, probada la posesión del arma de fuego, el juzgador puede inferir que el imputado no cuenta con autorización para poseerla o portarla. Consideró que en la etapa de vista preliminar, regida por el *quantum* probatorio

de *scintilla,* el Estado puede utilizar esta presunción para establecer uno de los elementos del delito imputado, a saber, la ausencia de licencia o permiso para portar el arma de fuego. Señaló que esta presunción débil, en unión a la prueba de la portación, permitió al Estado establecer la probabilidad de que el delito por violación al Art. 5.04 de la Ley de Armas se cometió y que se justificaba un juicio contra el señor Nieves Cabán. Ahora bien, reconoció que en el juicio correspondía al Ministerio Público probar la infracción al Art. 5.04 de la Ley de Armas más allá de duda razonable.

El peticionario solicitó la reconsideración del dictamen. El 26 de junio de 2017 se le notificó una resolución en la cual el foro apelativo intermedio denegó su petitorio.

El 25 de julio de 2017 el señor Nieves Cabán presentó una *Petición de certiorari* ante esta Curia junto a una *Moción urgente solicitando auxilio de jurisdicción*.[1] Evaluados los

---

[1] El peticionario imputó los errores siguientes al Tribunal de Apelaciones:

"1. Erró el Tribunal Apelativo al declarar No Ha Lugar la Moción de Desestimación al amparo de la Regla 64 (I) y 64 (P) de Procedimiento Criminal.

2. Erró el Tribunal Apelativo al determinar que el Ministerio Público no viene obligado a probar que el acusado no tiene licencia y/ [sic] permiso de portar arma, aún cuando, como en el presente caso, no se imputa ese elemento en la denuncia ni se presenta prueba sobre el mismo en la Vista Preliminar, imponiéndole al acusado el peso de rebatir la presunción establecida en la Ley de Armas.

3. Erró el Honorable Tribunal Apelativo al declarar la constitucionalidad de la presunción que establece el Art. 5.11 de la Ley de Armas de que toda arma se posee de manera ilegal hasta tanto un acusado produzca prueba sobre la tenencia o no de licencia para portar la misma, transgrediendo el derecho a la presunción de inocencia.

4. Erró el Honorable Tribunal Apelativo al no declarar constitucional el Art. 5.04 de la Ley de Armas, limitando el

planteamientos del peticionario, los cuales reproducían básicamente lo esbozado en el tribunal apelativo, una mayoría del Pleno de este Tribunal declaró ha lugar la moción en auxilio de jurisdicción y expidió el auto de *certiorari* solicitado*.*

En lo pertinente, el peticionario arguye que hubo ausencia total de prueba para justificar la determinación de causa probable en vista preliminar porque el Estado no presentó evidencia para establecer la tenencia o no de una licencia o permiso para portar el arma de fuego. Sostiene que la denuncia tampoco contenía alegación en cuanto a la portación ilegal. El fundamento del señor Nieves Cabán es que, como la denuncia no imputaba la portación ilegal de un arma de fuego, la presunción sobre la ilegalidad de la portación no se activó. Aduce que para que el Ministerio Público quedara relevado de presentar prueba sobre ese hecho en la vista preliminar tenía que alegarlo en la denuncia adecuadamente. Por otro lado, arguye que la presunción es inconstitucional porque tiene el efecto de invertir la carga probatoria y afecta el derecho del acusado a guardar silencio. Para sostener su posición, el señor Nieves Cabán expone que "la persona acusada no está obligada a presentar prueba a su favor, porque es el Ministerio Público el que tiene que derrotar la presunción de inocencia mediante prueba suficiente en derecho, es decir, que establezca todos los

derecho de los ciudadanos a tener y poseer armas de fuego en contravención a la Segunda Enmienda de la Constitución de los Estados Unidos de América".

elementos del delito más allá de duda razonable".[2] Alega que "[s]i el Estado es quien tiene el deber de presentar prueba de todos los elementos del delito, no es oneroso para el Estado que en las etapas previas al juicio, presente prueba de la no tenencia de licencia de portación de armas".

Por su parte, el Estado sostiene que en la vista preliminar se puede determinar causa probable para acusar por un delito distinto al imputado en la denuncia. Aduce que en la denuncia se especificó que la imputación era por la "Ley 404 **Art. 5.04** Grave (2000) – **Portación y Uso de Armas de Fuego sin licencia**". Señala que esto, unido a los hechos alegados, es una notificación adecuada al señor Nieves Cabán sobre la conducta delictiva imputada, pues la denuncia indicaba que este de forma ilegal usó, transportó o portó un arma. Asimismo, argumenta que la jurisprudencia estatal y federal han validado presunciones en procesos criminales, incluso aquellas que recaen sobre los elementos del delito, cuando la presunción es permisible y existe una relación racional entre el hecho base ⸺el hecho probado⸺ y el hecho presumido. Esboza, además, varios casos en que se ha reconocido la presunción de ilegalidad de la portación del arma y en los que se ha resuelto que la presentación de la licencia o el permiso que autorizaba la portación del arma es una defensa que corresponde establecer al acusado. Plantea que conforme a *Pueblo v. Pacheco Ruiz*, supra, toda vez que estableció el

---

[2] Alegato del peticionario, pág. 17.

hecho básico ⸺la portación del arma⸺ y se había alegado en la denuncia el hecho presumido ⸺que la portación era ilegal, sin licencia⸺ no tenía que presentar prueba sobre este último hecho. Indica que no hubo ausencia total de prueba en la vista preliminar porque una de las víctimas declaró que observó al peticionario portar un arma de fuego y disparar contra él y la otra víctima, quien falleció presuntamente por los disparos que recibió. Argumenta que la presunción de ilegalidad en la portación por no tener licencia es una inferencia permisible. Finalmente, sostiene que es prematuro evaluar la constitucionalidad de la presunción.

Evaluados los alegatos de las partes, procedemos a resolver.

## II

Como cuestión de umbral a la resolución del presente caso, debemos tener presente la etapa procesal en que se encontraba y sobre la cual estamos expresándonos. Nuestra revisión, al igual que lo hemos hecho en el pasado, debe estar delimitada por tres aspectos principales, a saber: *primero*, los principios que gobiernan el proceso de determinación de causa probable para acusar, con especial atención al grado de prueba que el Ministerio Público está obligado a presentar en la vista preliminar; *segundo,* los efectos que tiene la determinación de causa probable en esta etapa; y, *tercero*, los criterios que rigen la revisión de una moción de desestimación al amparo de la Regla 64(p) de Procedimiento Criminal, supra. En otros términos, la controversia ante

nuestra consideración exige que la analicemos a la luz de la naturaleza del proceso de determinar causa para juicio que se realiza en la vista preliminar. En este examen debemos tener presentes los propósitos de esta etapa del proceso judicial penal, los cimientos en que se sustenta esta audiencia creada estatutariamente, y el efecto que puede tener una inferencia o presunción en el juicio de probabilidades que en esta se ejecuta. Ahí yace la solución de la controversia ante nuestra consideración, pues descartar una presunción en esta etapa de los procesos, como solicita el peticionario, requiere de fundamentos constitucionales reales para ello. Así lo hemos hecho y no vemos razón para que sea distinto en esta ocasión.[3]

A. *Determinación de causa probable para acusar*

Conforme disponen nuestras Reglas de Procedimiento Criminal, toda persona imputada de un delito grave tiene el derecho a la celebración de una vista preliminar.[4] La etapa de vista preliminar está estatuida en la Regla 23 de Procedimiento Criminal de Puerto Rico, 34 LPRA Ap. II. La función básica de esta audiencia se restringe a la determinación de existencia o no de causa probable para creer que se ha cometido un delito y que este último se cometió por la persona imputada.[5] El propósito de la vista preliminar es evitar que se someta a un ciudadano arbitraria e

---

[3] Véase *Pueblo v. Rodríguez Aponte*, 116 DPR 654, 660 (1985).

[4] *Pueblo v. Negrón Nazario*, 191 DPR 720, 732 (2014).

[5] *Pueblo v. Pillot Rentas,* 169 DPR 746, 751 (2006); *Pueblo v. Andaluz Méndez*, 143 DPR 656, 661 (1997).

injustificadamente a los rigores de un proceso criminal.[6] En otros términos, se creó "para determinar si el Estado tiene una adecuada justificación para someter al imputado a juicio".[7] Es decir, lo que se busca es "averiguar, mediante una vista adversativa, si el Estado tiene suficiente prueba para continuar con el proceso judicial".[8] En ese contexto, la vista preliminar queda instituida como una audiencia adversarial inicial en la que se debe determinar que existe causa probable sobre dos asuntos: (1) la comisión del delito grave y (2) que la persona imputada es quien lo perpetuó.[9]

Claro está, la obligación del Ministerio Público no es presentar toda la prueba que desfilará en el juicio.[10] Por el contrario, su responsabilidad probatoria en esta etapa la hemos definido como una *scintilla* de evidencia que dé paso a una determinación *prima facie* sobre los dos aspectos mencionados.[11] Una vez quedan establecidos de forma *prima facie* los elementos del delito y la conexión del imputado, se

---

[6] *Pueblo v. Negrón Nazario*, supra, pág. 733; *Pueblo v. Fernández Rodríguez*, 183 DPR 770, 798 (2011); *Pueblo v. García Saldaña*, supra, pág. 788; *Pueblo v. Andaluz Méndez*, supra, pág. 661; *Pueblo v. Rodríguez Aponte*, supra, pág. 663. Véase, además, *Pueblo v. Opio Opio*, 104 DPR 165, 171 (1975); *Pueblo v. Figueroa Castro*, 102 DPR 279, 284 (1974). Véase, además, W.R. LaFave y otros, *Criminal Procedure*, 4ta ed., Thomson Reuters, Vol. 4, Sec. 14.1(a), pág. 309.

[7] *Pueblo v. Ortiz, Rodríguez*, 149 DPR 363, 374 (1999) ("Su función esencial es la de evitar que se someta a la persona imputada a los rigores de un proceso criminal sin que existan suficientes fundamentos que lo justifiquen"); *Pueblo v. Rodríguez Aponte*, supra, pág. 664. Véase, además, *Pueblo v. Negrón Nazario*, supra, pág. 733.

[8] *Pueblo v. Ortiz, Rodríguez*, supra, págs.  374 y 377; *Pueblo v. Rivera Rodríguez*, 138 DPR 138, 142-143 (1995).

[9] *Pueblo v. Negrón Nazario*, supra, pág. 732.

[10] Íd., pág. 733 ("no está obligado a presentar toda la prueba de cargo").

[11] Íd. págs. 733-734.

justifica una determinación de causa probable.[12] Por lo tanto, cuando se presenta una denuncia por un delito grave, un dictamen de causa probable para arrestar es insuficiente para someter a una persona a los rigores de un juicio, pues en la vista preliminar el Ministerio Público debe obtener lo que sería en términos prácticos la autorización para presentar las acusaciones correspondientes.[13]

Ciertamente, la prueba que se presente en la vista preliminar, conforme disponen las normas de derecho probatorio en Puerto Rico, tiene que ser legalmente admisible en el juicio en su fondo.[14] Lo anterior no debe conllevar que se confunda esta vista con un minijuicio.[15] Como hemos expresado, "con la determinación del magistrado en esta etapa no se adjudica definitivamente la responsabilidad del imputado; ni siquiera queda expuesto a ser convicto".[16] Así pues, **la vista preliminar es una audiencia de probabilidades y no persigue que se establezca la culpabilidad o la inocencia del imputado.**[17] Es decir, la determinación que se realiza en

---

[12] *Pueblo v. Andaluz Méndez*, supra, pág. 662.

[13] Íd., págs. 732-733. Véanse, además, *Pueblo v. Rivera Vázquez*, 177 DPR 868, 876 (2010); *Pueblo v. García Saldaña*, 151 DPR 783, 789 (2000); *Pueblo v. Jiménez Cruz*, 145 DPR 803, 815 (1998).

[14] *Pueblo v. Pillot Rentas,* supra, pág. 753; *Pueblo v. Andaluz Méndez*, supra, pág. 662.

[15] *Pueblo v. Negrón Nazario*, supra, pág. 733; *Pueblo v. Rivera Cuevas*, 181 DPR 699, 706 (2011); *Pueblo v. Rivera Vázquez*, supra, págs. 875-876; *Pueblo v. Pillot Rentas,* supra, pág. 761; *Pueblo v. Ortiz, Rodríguez*, supra, págs. 374-375; *Pueblo v. Andaluz Méndez*, supra, pág. 662.

[16] Íd.

[17] *Pueblo v. Ortiz, Rodríguez*, supra, pág. 374; *Pueblo v. Rodríguez Aponte,* supra, pág. 663 ("El propósito de la vista preliminar es tratar con probabilidades, tanto en lo referente a la comisión de un delito como en cuanto al autor de dicho delito").

la vista preliminar no es una adjudicación final en los méritos del caso, ya que eso corresponde propiamente a la etapa del juicio.[18] En cambio, como adelantamos, su objetivo es comprobar si el Ministerio Público tiene justificación adecuada para continuar con un proceso judicial porque no se trata de una imputación frívola e insustancial que no merezca la intervención de los funcionarios que participan en un juicio.[19]

Entonces, es luego de esta decisión en la vista preliminar, de ser favorable al Estado, que se permite presentar la acusación por el delito grave. Como consecuencia el proceso pasa al juicio, en el cual el Estado, en efecto, deberá probar la culpabilidad del acusado más allá de duda razonable y el juzgador emitirá el dictamen final en cuanto a si se acreditó la culpabilidad de la persona acusada.[20] Nótese que esta es la fase a la que la Constitución se refiere en particular detalle, ya que el juicio en su fondo es el momento realmente culminante y crítico en el proceso criminal.[21] Todo lo anterior lo hemos resumido de la manera siguiente:

---

[18] *Pueblo v. Andaluz Méndez*, supra, pág. 661; *Pueblo v. Rodríguez Aponte*, supra, pág. 660.

[19] *Pueblo v. Pillot Rentas,* supra, pág. 751; *Pueblo v. Ortiz, Rodríguez*, supra, pág. 374; *Pueblo v. Andaluz Méndez*, supra, pág. 661; *Pueblo v. Rodríguez Aponte*, supra, pág. 665 esc. 3.

[20] *Pueblo v. Negrón Nazario*, supra, pág. 733 ("el objetivo de la vista preliminar no es establecer la culpabilidad del imputado más allá de duda razonable, sino constatar que, en efecto, el Estado cuenta con una justificación adecuada para continuar con un proceso judicial más extenso y profundo").

[21] *Pueblo v. Andaluz Méndez*, supra, pág. 662. Véanse, además, *Pueblo v. Pillot Rentas,* supra, pág. 751; *Pueblo v. Rodríguez Aponte*, supra, pág. 660.

> […] nuestra jurisprudencia ha establecido que: (1) el objeto central de la vista preliminar no es hacer una adjudicación en los méritos en cuanto a la culpabilidad o inocencia del acusado; (2) aunque se trata de una función propiamente judicial, no es 'un mini juicio'; (3) el fiscal no tiene que presentar toda la prueba que posea; (4) la vista está encaminada a proteger a la persona imputada a través de un filtro o cedazo judicial por el cual el Estado tiene que pasar prueba, y demostrar si está justificado o no a intervenir con la libertad de un ciudadano y someterlo a los rigores y contingencias de un juicio plenario, y (5) una vez se demuestra y se justifica esta intervención, la vista ha cumplido su propósito de ley.[22]

Por otro lado, cabe reiterar que la génesis de la vista preliminar es estatutaria, no constitucional.[23] Consecuentemente, este Tribunal ha reconocido que "no es correcto ni jurídicamente apropiado ⸺como método adjudicativo⸺ el análisis teórico que transtermina **mecánicamente** los preceptos constitucionales a las Reglas de Procedimiento Criminal". (Énfasis suplido).[24]

Además, al igual que toda decisión de los foros judiciales, la determinación de causa probable en la vista preliminar goza de una presunción legal de corrección.[25] El imputado puede atacar la determinación de causa probable y rebatir la presunción de corrección mediante una moción de desestimación al amparo de la Regla 64(p) de Procedimiento Criminal en aquellas instancias en que entienda que el Estado

---

[22] Íd., pág. 665.

[23] *Pueblo v. Andaluz Méndez*, supra, pág. 662; *Pueblo v. Rodríguez Aponte*, supra, pág. 660.

[24] Íd.

[25] *Pueblo v. Andaluz Méndez*, supra, pág. 662. Véase, además, *Pueblo v. Rivera Alicea*, 125 DPR 37, 42 (1989).

no cumplió con su deber en esa etapa.[26] Para rebatir esta presunción es indispensable que el acusado persuada y demuestre al tribunal que hubo ausencia total de prueba legalmente admisible respecto a alguno de los elementos del delito o de su conexión con el delito imputado.[27] En ese sentido, el criterio rector es la ausencia total de prueba; esto es, que no se desfiló evidencia sobre el particular.[28] De no cumplirse con este requisito, no procedería la desestimación de la acusación.[29] Sobre este asunto, recientemente, en *Pueblo v. Negrón Nazario,* 191 DPR 720, 736 (2014), expresamos que

> el magistrado que evalúe una moción de desestimación al amparo de la Regla 64(p) debe tener presente que no se trata de una nueva determinación de causa probable. Por lo tanto, si el tribunal entiende necesario la celebración de una vista para dilucidar la moción, **su tarea estará limitada a examinar la prueba presentada durante la vista en que se determinó causa probable para acusar.** Evaluada exclusivamente tal prueba, el magistrado debe determinar si hubo ausencia total de prueba sobre la comisión del delito; ya sea porque no se presentó alguna evidencia sobre un elemento del delito imputado o porque no se presentó alguna evidencia sobre la conexión del acusado con el delito. **Solamente ante una situación de ausencia total de prueba es que procede sustituir el criterio del magistrado que inicialmente halló causa para acusar.** (Énfasis suplido).

---

[26] *Pueblo v. Andaluz Méndez*, supra, pág. 662.

[27] Íd. Véanse, *e.g.: Pueblo v. Negrón Nazario*, supra; *Pueblo v. González Pagán*, 120 DPR 684 (1988); *Pueblo v. Pérez Suárez*, 116 DPR 807 (1986). Asimismo, procedería la desestimación de la acusación si se infringió alguno de los requisitos o derechos procesales que amparan al acusado y que deben observarse durante la vista preliminar. Véanse, *e.g.: Pueblo v. Branch*, 154 DPR 575 (2001); *Pueblo v. Padilla Flores*, 127 DPR 698 (1991).

[28] *Pueblo v. Negrón Nazario,* supra*, pág. 736.

[29] Íd.

Precisamente, para ejemplificar lo anterior, y en vista de los planteamientos que se esbozan en el caso de autos, conviene revisitar detalladamente a *Pueblo v. Negrón Nazario,* supra. Allí, dadas las alegaciones presentadas por el Ministerio Público y la evidencia desfilada durante la vista preliminar, tuvimos que resolver si procedía la acusación por el Art. 5.04 de la Ley de Armas de Puerto Rico contra el Sr. Alvin Negrón Nazario. Aclaramos si un agente de la Policía de Puerto Rico podía ser acusado por el delito de portación ilegal de un arma cuando presuntamente utilizó su arma de reglamento en la comisión de un delito o su tentativa.

En aquella ocasión, el señor Negrón Nazario tuvo un altercado con otro individuo mientras se encontraba libre de sus funciones oficiales compartiendo en un establecimiento comercial. El Estado alegó que el señor Negrón Nazario apuntó y disparó con su arma de reglamento contra un vehículo en el que se encontraba la presunta víctima, quien resultó herida al recibir tres impactos de bala. En la vista preliminar el Ministerio Público presentó como prueba el testimonio de la presunta víctima y de dos agentes de la Policía. En lo que concierne a estos últimos dos, declararon que los policías **"están autorizados a portar un arma en cualquier sitio"** y en **"todo el tiempo"**; que como agentes tienen que **"portarla y poseerla en todo momento"**.[30] Sin embargo, el juez encontró

---

[30] Los agentes que declararon fueron el Sr. Raúl Acosta Pabón y el Sr. José Acevedo Olivencia. Durante el testimonio del agente Acosta Pabón, este declaró "[q]ue Elvin se identificó como Policía y que **los Policías están autorizados a portar un arma en cualquier sitio**. Que Elvin estaba nervioso y decía que lo iban a matar. Que el arma que posee un agente la autoriza a portar la Policía de Puerto Rico **con un permiso** y que se está

causa para acusar por todos los cargos imputados, por lo que se presentaron las acusaciones correspondientes. En cuanto al Art. 5.04 de la Ley de Armas, la acusación reconoció que el señor Negrón Nazario tenía permiso de la Policía de Puerto Rico para portar el arma de fuego, pero no tenía una licencia a tenor con la Ley de Armas debidamente expedida por el Tribunal de Primera Instancia, y que el acusado había portado la misma en circunstancias no cubiertas por el permiso que ostentaba.

El señor Negrón Nazario solicitó la desestimación de la acusación por el Art. 5.04, *supra*. Adujo que hubo ausencia total de prueba sobre la portación ilegal del arma de fuego. Alegó que de los testimonios presentados surgía que tenía una licencia o permiso válidamente expedido para portar su arma de reglamento en todo momento. Las partes presentaron una exposición narrativa de la prueba. En ella estipularon los testimonios vertidos en la vista preliminar y las declaraciones juradas de los agentes. El foro primario desestimó los cargos que imputaban la portación ilegal. El Tribunal de Apelaciones revocó el dictamen.

De acuerdo con las normas de revisión de la determinación de causa probable para juicio, evaluamos si el señor Negrón Nazario había demostrado que el dictamen del foro primario en

---

**autorizado a portar la misma todo el tiempo**". (Énfasis suplido). Por su parte, el agente Acevedo Olivencia testificó que "el Sr. Elvin Negrón está autorizado por la Ley 53 de la Policía de PR y la autorización que da el Superintendente a portar un arma de fuego. **Que yo como Agente tengo que portarla y poseerla en todo momento**". (Énfasis suplido). Véase *Pueblo v. Negrón Nazario,* supra*, págs. 726-727.

la vista preliminar para acusar por el delito de portación de un arma de fuego sin licencia fue contrario a derecho. Luego de estudiar con rigor los alegatos de las partes y el derecho que aplicaba, concluimos que en ese caso en particular no procedía la acusación y ordenamos la desestimación de la acusación en cuanto a la portación ilegal. De la prueba presentada por el Estado manaba que el señor Negrón Nazario estaba autorizado a portar el arma de reglamento.[31] Reconocimos que la ausencia de autorización para la correspondiente portación del arma era un requisito indispensable para la comisión del delito allí tipificado. Razonamos que "una persona con un permiso para portar podría incurrir en portación ilegal si *porta* su arma de fuego de manera contraria a los términos establecidos en el permiso de portación".[32] Podía incurrir en el delito, además, "una persona con licencia […] cuando *transporta* un arma o parte de esta de manera contraria a los términos que establece la ley".[33] Así pues, expusimos que la portación ilegal de un arma de fuego podía demostrarse en el juicio: (1) con evidencia de que, en efecto, la persona portó un arma de fuego sin un permiso a tales efectos, en cuyo caso la evidencia debe estar dirigida a demostrar la portación del arma y la ausencia de permiso, y (2) con evidencia de que aun cuando la persona

---

[31] Es que el Art. 5.04, supra, en lo pertinente, disponía que "[t]oda persona que transporte cualquier arma de fuego o parte de ésta, sin tener una licencia de armas, o porte cualquier arma de fuego sin tener su correspondiente permiso para portar armas, incurrirá en delito grave […]".

[32] *Pueblo v. Negrón Nazario,* supra*,* págs. 753.

[33] Íd.

contaba con un permiso de portación, esta no lo hizo según los términos autorizados.[34] Encontramos que el señor Negrón Nazario logró demostrar que de la evidencia desfilada en la vista preliminar lo único que el Estado estableció fue que el imputado utilizó su arma de fuego para apuntar y disparar contra un vehículo. Ahora bien, según la prueba, esto lo había hecho con un arma que estaba autorizado para portar **en todo lugar y momento**. Colegimos que

> [t]al conducta, *aunque similar*, no es paralela a los hechos constitutivos del delito que el legislador tipificó mediante el […] Art. 5.04. Por lo tanto, el Ministerio Público falló en presentar *alguna evidencia* relacionada con los elementos específicos del delito de portación y uso de un arma de fuego sin licencia.[35]

El problema con la imputación que hizo el Estado en *Pueblo v. Negrón Nazario*, supra, es que, de acuerdo a la acusación y la prueba presentada en la vista preliminar, no había manera de que se pudiera probar **en el juicio** que el delito del Art. 5.04 de la Ley de Armas se cometió. De hecho, **no había forma de que en esa etapa del proceso el juez pudiera inferir**, **ni siquiera remotamente, que el imputado no tenía una licencia o permiso para portar el arma**. La prueba, en

---

[34] Íd., pág. 757.

[35] Íd., págs. 758-759. Allí reconocimos lo siguiente: "Así lo establece, de hecho, el lenguaje utilizado en la redacción del delito de portación ilegal, el cual se limita a reseñar el asunto de la portación o transportación sin mayor atención a qué uso se le brinde al arma de fuego. Esto porque para fines exclusivos del Art. 5.04, *supra*, **lo que el legislador quiso tipificar como delito fue ese mero ejercicio de portar sin permiso o transportar un arma o parte de esta sin licencia**. Es eso lo que se considera como un delito grave con una posible pena de reclusión de diez años". (Énfasis suplido). Íd., pág. 753. Más adelante señalamos que "el artículo hace referencia al *uso* que se le brinda a esa arma de fuego que se porta de manera ilegal, pero únicamente para fines de limitar la aplicación de penas alternativas de reclusión y otros privilegios y para establecer penas agravadas". Íd., págs. 753-754.

efecto, establecía todo lo contrario; que poseía un permiso, y ese permiso le permitía portarla en todo momento y en todo lugar.

Examinemos, entonces, ciertos aspectos importantes de las presunciones en los procesos criminales.

B. *Presunciones en procesos criminales*

Las presunciones en los procesos judiciales "son reglas de inferencia que controlan o limitan la discreción del juzgador en el aspecto central de deducir o inferir las conclusiones pertinentes a partir de toda la evidencia presentada en el juicio".[36] La Regla 301 de Evidencia de Puerto Rico, 32 LPRA Ap. VI, define una *presunción* como una deducción de un hecho autorizado a hacer o que se requiere que se haga de otro hecho o grupo de hechos previamente establecidos en la acción.[37] El *hecho base* es ese elemento fáctico establecido previamente, y el *hecho presumido* es el elemento fáctico que se deduce del hecho base.[38]

Aunque hay varios fundamentos para crear presunciones, la razón central en que estas se sostienen es una cuestión de **probabilidades**.[39] En ese sentido, en gran medida la implementación de las presunciones está guiada por la lógica, la experiencia y el sentido común.[40] En otros términos, el

---

[36] Chiesa Aponte, *op. cit.,* pág. 46.

[37] "Las presunciones son aquéllas establecidas por ley o por decisiones judiciales". Regla 304 de Evidencia de Puerto Rico, 32 LPRA Ap. VI.

[38] Regla 301 de Evidencia de Puerto Rico, 32 LPRA Ap. VI.

[39] Chiesa Aponte, *op. cit.*, pág. 46.

[40] Íd., pág. 46.

juicio inferencial del juzgador.[41] Así, establecido el hecho base para la presunción, se permite que el juzgador infiera y dé como establecido el hecho presumido.

Ahora bien, existen varios tipos de presunciones según sus características. Las presunciones pueden ser *controvertibles* o *incontrovertibles*. A su vez, estas pueden ser *mandatorias* o *permisibles*.[42] Pueden ser, de igual manera, conforme al quantum de prueba que se requiere de quien debe atacarla, presunciones *fuertes* o *débiles*.[43]

Una presunción incontrovertible no puede ser rebatida, por lo que el hecho base obliga a hacer la inferencia del hecho presumido sin que la parte contra quien se aplica la presunción pueda presentar prueba sobre la inexistencia del hecho presumido.[44] De poderse rebatir, es decir, si existe la posibilidad de presentar evidencia para demostrar la inexistencia del hecho presumido, estamos ante una presunción controvertible.[45]

Por su parte, las presunciones mandatorias son aquéllas que el juzgador está obligado a seguir y, por tanto, a inferir el hecho presumido.[46] Contrario a lo anterior, ante una

---

[41] Íd.

[42] *Pueblo v. Sánchez Molina*, 134 DPR 577, 587-588 (1993).

[43] R. Emmanuelli Jiménez, *Prontuario de derecho probatorio puertorriqueño*, 4ta ed., Ed. Situm, 2015, pág. 151.

[44] Regla 301 de Evidencia de Puerto Rico, supra.

[45] Íd.

[46] Chiesa Aponte, *op. cit.*, pág. 47.

presunción permisible el juzgador puede ⸺pero no tiene⸺ que inferir el hecho presumido.[47]

Las presunciones en procesos penales y en procesos civiles no se aplican de la misma forma. La Regla 303 de Evidencia, supra, regula las presunciones en procedimientos criminales al establecer que

> [c]uando en una acción criminal la presunción perjudica a la persona acusada, tiene el efecto de permitir a la juzgadora o al juzgador inferir el hecho presumido si no se presenta evidencia alguna para refutarlo. Si de la prueba presentada surge duda razonable sobre el hecho presumido, la presunción queda derrotada. La presunción no tendrá efecto alguno de variar el peso de la prueba sobre los elementos del delito o de refutar una defensa de la persona acusada.
> (a) Cuando beneficia a la persona acusada, la presunción tendrá el mismo efecto que lo establecido en la Regla 302 de este apéndice.
> (b) Instruir al jurado sobre el efecto de una presunción contra la persona acusada, la jueza o el juez deberá hacer constar que:
> (1) Basta que la persona acusada produzca duda razonable sobre el hecho presumido para derrotar la presunción, y
> (2) el jurado no estará obligado a deducir el hecho presumido, aun cuando la persona acusada no produjera evidencia en contrario. Sin embargo, se instruirá al jurado en cuanto a que puede deducir o inferir el hecho presumido si considera establecido el hecho básico.

Entonces, en los procesos penales el efecto de la presunción depende de si esta beneficia o perjudica al acusado. Una presunción que favorece al Ministerio Público y perjudica al

---

[47] *Francis v. Franklin,* 471 US 307, 314 (1986) ("A permissive inference suggests […] a possible conclusion to be drawn if the State proves predicate facts, but does not require […] to draw that conclusion"); Chiesa Aponte, *op. cit.,* pág. 47.

acusado tiene que ser una presunción controvertible, permisiva y débil.[48]

En *Pueblo v. De Jesús Cordero*, 101 DPR 492, 501 (1973), al evaluar la validez de las presunciones, este Tribunal esbozó, como parámetro a seguir, el que estas no alteraran el peso de la prueba impuesto al Estado. Asimismo, señalamos que estas no podían lesionar la presunción de inocencia. De hecho, **allí validamos una norma de evidencia *prima facie* de posesión ilegal por parte de todos los ocupantes de un vehículo en el cual se encuentra un arma**. Posteriormente, en *Pueblo v. González Beníquez*, 111 DPR 167 (1981), habiéndose resuelto *Ulster County Court v. Allen*, 442 US 140, 156 (1979), determinamos que se trataba de una presunción permisible que no invertía la carga de la prueba porque podía dar o no a que se infiriera el hecho presumido y el Estado de todos modos estaba obligado a probar cada elemento del delito fuera de duda razonable. **Entendimos que esto no afectaba la presunción de inocencia o el derecho a no incriminarse, ni el derecho a un juicio u otros derechos.**

Así las cosas, en *Pueblo v. Sánchez Molina,* 134 DPR 577 (1993), acogimos finalmente la norma instaurada por el Tribunal Supremo de Estados Unidos al evaluar la validez de las presunciones en procesos criminales en virtud del debido proceso de ley y la presunción de inocencia. Precisamente, como las presunciones son "normas relativas al modo de evaluar

---

[48] Chiesa Aponte, *op. cit.,* pág. 48.

la evidencia y las inferencias que pueden hacerse de ésta",
en virtud del debido proceso de ley, expresamos que estas
presunciones deben cumplir con varios requisitos, a saber:
(1) no pueden ser arbitrarias, por lo que debe existir una
relación racional entre el hecho básico y el hecho presumido,
y (2) no pueden violentar la presunción de inocencia ni la
obligación del Ministerio Público de establecer la comisión
del delito más allá de duda razonable.[49] En consecuencia,
resolvimos que las presunciones mandatorias contra el
acusado, fueran incontrovertibles o refutables, eran
inconstitucionales.[50] Ello, pues las primeras conllevan que
se haga una inferencia sobre los elementos del delito de forma
concluyente y, por tanto, tienen el efecto de eximir al Estado
de probar el caso más allá de duda razonable y atentan contra
la presunción de inocencia. Las segundas "permiten inferir un
elemento del delito o un hecho esencial, y transfieren al
acusado la obligación de producir prueba para persuadir al
juzgador en torno a la no ocurrencia de ese elemento o hecho".

Ahora bien, reconocimos que las presunciones permisibles
o no mandatorias **"[n]o transfiere[n] al acusado ni el peso de
la prueba ni la obligación de persuadir al juzgador"**. (Énfasis

---

[49] Véase *Tot v. US,* 319 US 463 (1943).

[50] Sin embargo, reconocimos que "[e]l Tribunal Supremo federal ha intimado que en el único caso en que una presunción mandatoria podría ser válida es si, probado el hecho básico, la culpabilidad puede inferirse más allá de toda duda razonable. *Ulster County Court v. Allen*, 442 U.S. 140, 167 (1979). Es decir, no bastaría con que cumpliera con el criterio de probabilidad esbozado en *Leary v. United States*, 395 U.S. 6 (1969)". *Pueblo v. Sánchez Morales,* supra, pág. 588 esc. 4. Véase, además, *Pueblo v. Figueroa Pomales*, 172 DPR 403, 428 (2007).

suplido). Por ello, señalamos que estas inferencias o presunciones son

> "válida[s] a menos que el acusado pueda demostrar que, **a la luz de [los] hechos probados en su caso particular**, no había un nexo racional entre el hecho básico y el hecho presumido. Es decir, que no era razonable ni compatible con el sentido común que un juzgador de los hechos hiciera la conexión entre el hecho básico y el presumido. *Francis v. Franklin*, supra, págs. 314-315; *Ulster County Court v. Allen*, supra, pág. 157. A esos efectos, y siempre que no sean la única base en que descansa la determinación **de culpabilidad**, basta que la presunción satisfaga el **criterio de probabilidad.** Como vimos, éste consiste en que la ocurrencia del hecho presumido sea más probable que la no ocurrencia. *Ulster County Court v. Allen*, supra, pág. 167. (Énfasis suplido y escolio omitido).

Finalmente, en lo pertinente, validamos las inferencias del hecho presumido en controversia analizándolas de su faz o por las circunstancias particulares del caso, conforme la doctrina reconocida en *Ulster County Court v. Allen*, supra.[51]

## C. *Art. 5.04 de la Ley de Armas*

De acuerdo con la Ley de Armas es menester contar con una licencia para poseer un arma. En casos en que no se tenga una licencia para poseer el arma, la persona no podría tenerla en ningún sitio. El Art. 5.04 de la Ley de Armas, *supra*, tipifica como delito la portación de un arma de fuego sin licencia o permiso. En su parte pertinente, este estatuto dispone lo siguiente:

> Toda persona que transporte cualquier arma de fuego o parte de ésta, sin tener una licencia de armas,

---

[51] *Ulster County Court v. Allen*, supra, págs. 157-163 ("When reviewing this type of device, the Court has required the party challenging it to demonstrate its invalidity **as applied to him**. […] Our cases considering the validity of permissive statutory presumptions […] have rested on an evaluation of the presumption **as applied to the record before the Court**"). (Énfasis suplido).

o porte cualquier arma de fuego sin tener su correspondiente permiso para portar armas, incurrirá en delito grave y convicta que fuere, será sancionada con pena de reclusión por un término fijo de diez (10) años, sin derecho a sentencia suspendida, a salir en libertad bajo palabra, o a disfrutar de los beneficios de algún programa de desvío, bonificaciones o alternativa a la reclusión reconocida en esta jurisdicción, debiendo cumplir en años naturales la totalidad de la pena impuesta. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de veinte (20) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de cinco (5) años.[52]

En *Pueblo v. Pacheco Ruiz,* supra, pág. 30, en lo pertinente, expresamos que en casos de portación o posesión ilegal de armas de fuego el Ministerio Fiscal no está obligado a probar que el acusado no tenía licencia o permiso con ese objetivo, cuando alegó este hecho en la acusación y probó la portación o posesión del arma. Esto, dado que "en ellos surge la presunción de portación o posesión ilegal y es al acusado a quien incumbe destruir tal presunción".[53] Nuestro pronunciamiento se basó en *Pueblo v. Segarra,* 77 DPR 736 (1954), y *Pueblo v. Negrón Ramos,* 76 DPR 346 (1954).[54] En *Pueblo v. Segarra*, supra, este Tribunal concluyó que

[e]l Pueblo imputó al acusado el portar un arma de fuego sin tener licencia para ello y probó que portaba un revólver en la fecha indicada en la acusación. Una presunción de portación ilegal surgió entonces, la cual el acusado estaba llamado a controvertir probando, si podía, que tenía

---

[52] 25 LPRA sec. 458c.

[53] *Pueblo v. Pacheco Ruiz,* supra, pág. 30.

[54] Señalamos que "una vez el Pueblo le ha hecho conocer la situación al acusado mediante la alegación negativa, no es obligación del fiscal el aducir evidencia afirmativa para sostener tal alegación negativa, que de ser falsa puede ser fácilmente controvertida  mediante un documento u otra evidencia a los cuales el acusado tenga acceso". *Pueblo v. Segarra,* 77 DPR 736, 737-738 (1954).

licencia para portarla. En ausencia de tal prueba estableciendo la mencionada defensa y demostrando que el acusado caía dentro de la excepción en el estatuto para aquéllos que tienen licencias para portar un arma, el jurado estaba justificado en hallar al acusado culpable de lo que se le imputaba en la acusación.[55]

Así las cosas, el dictamen que emitimos en *Pueblo v. Pacheco Ruiz,* supra, lo ratificamos en varios casos posteriores.[56] Sin embargo, en ese momento, ni en los subsiguientes, tuvimos que analizar la naturaleza de esta presunción. Procedemos a hacerlo.

**III**

Como el debido proceso de ley es inherentemente circunstancial, en el pasado este Tribunal ha establecido que "existen diferencias fundadas y legítimas en cuanto a la extensión y el contenido de los derechos en el ámbito procesal. La dinámica varía en atención a las distintas etapas".[57] Si hay un asunto sobre el cual se han generado mayores distinciones entre la etapa de vista preliminar y el juicio plenario es en cuanto a los aspectos de la prueba. No nos referimos solo al quantum de evidencia, sino, también, a que existen derechos constitucionales que no se extienden de

---

[55] *Pueblo v. Segarra,* supra, pág. 738. Nótese que nunca se habló de una obligación del juzgador de tomar por verdadero o probado el hecho presumido.

[56] Véanse, e.g., *Pueblo v. Torres Nieves,* 105 DPR 340, 349 (1976); *Pueblo v. Cortés del Castillo,* 86 DPR 220, 235 (1962); *Pueblo v. Oquendo,* 79 DPR 542, 546 (1956). Véase, además, *Pueblo v. Del Río,* supra, págs. 688-689.

[57] *Pueblo v. Rodríguez Aponte,* supra, pág. 660.

la misma manera en esta etapa.[58] Claro está, esto no quiere

decir que la norma se aplique o el derecho se conceda

arbitrariamente, sino que hay circunstancias o etapas

procesales que, por su naturaleza, no aplican; por lo menos,

no con el mismo rigor que en el juicio en su fondo. Este es

el caso de la doctrina para evaluar una presunción en la vista

preliminar.

A tenor de la norma constitucional que adoptamos de la

jurisprudencia federal, lo que está prohibido es que las

presunciones en los procedimientos penales se apliquen

arbitrariamente en el caso o que eximan al Ministerio Público

"de cumplir con su deber de probarle al juzgador de los hechos

que el acusado es culpable **más allá de toda duda razonable**".

(Énfasis suplido).[59] Relacionado a este principio, "prohíbe

que se le imponga al acusado el deber de presentar prueba

para probarle al juzgador **que es inocente**".[60] (Énfasis

suplido). Es decir, lo que no se permite en una presunción es

la irracionalidad de su aplicación o que tenga el efecto de

alterar "la obligación del Estado de probar más allá de duda

razonable los elementos de responsabilidad criminal" para

---

[58] Véase, e.g., íd., pág. 667, en el cual resolvimos que el derecho absoluto del imputado a presentar los testigos que el Estado se reservó para el juicio desnaturalizaría el propósito de la vista preliminar.

[59] *Pueblo v. Sánchez Morales,* supra, pág. 587. Véanse, además, *Francis v. Franklin,* supra, págs. 313-314; *Yates v. Aiken*, 484 US 211, 214 (1988); *Ulster County Court v. Allen*, supra, pág. 156; *Mullaney v. Wilbur*, 421 US 684, 703-704 (1975). Véase Chiesa Aponte, *op. cit.,* pág. 67 ("la presunción no ha de tener el efecto de revelar al Estado de su obligación de persuadir al juzgador, más allá de duda razonable, en cuanto a todos los elementos del delito").

[60] *Pueblo v. Sánchez Morales,* supra, pág. 587.

rebatir la presunción de inocencia.[61] Esto es lo que daría ha lugar a una violación al debido proceso de ley.

Es que la doctrina se cimenta en la obligación constitucional del Estado de cumplir con el estándar de prueba más allá de duda razonable y no la *scintilla* o evaluación de probabilidades que se efectúa en la vista preliminar. Por esa razón, el análisis jurisprudencial que se elaboró, y al cual hicimos referencia, en nada está relacionado con el estándar probatorio de las audiencias preliminares ni con los principios o efectos que imperan en estas.

Precisamente, la Regla 303 de Evidencia de Puerto Rico regula estos aspectos para ajustar, de cierta manera, estas normas inferenciales a la doctrina constitucional. Al igual que la jurisprudencia, la normativa establecida en esta regla **es propiamente creada al considerar el juicio en su fondo y la obligación del Ministerio Público de probar el caso más allá de duda razonable.** De hecho, sabido es que el juzgador no está obligado a seguir las Reglas de Evidencia de Puerto Rico en la vista preliminar.[62] Conforme señalamos, la única exigencia es que la evidencia que se presente sea admisible de haberse presentado en el juicio.[63] En ese sentido, el examen

---

[61] Chiesa Aponte, *op. cit.,* pág. 61.

[62] Regla 103(F) de Evidencia de Puerto Rico, 32 LPRA Ap. VI.

[63] Íd. El profesor Chiesa Aponte señala que "las presunciones no son evidencia, sino reglas relativas al modo de evaluar la evidencia". L. Chiesa Aponte, *Sobre la validez de las presunciones*, 14 Rev. Jurídica U. Inter P.R. 727 (1980). Véase, además, *Vicenti Damiani v. Saldaña Acha*, 157 DPR 37, 51 esc. 13 (2002); *Díaz Fontánez v. Wyndham Hotel Corp.*, 155 DPR 364, 385 (2001). Por ello, no es requisito que las presunciones que se apliquen en la vista preliminar puedan utilizarse o que sean aplicables a la etapa del juicio en sus méritos.

constitucional que ha elaborado la jurisprudencia, al igual que la norma que establece la Regla 303 de Evidencia de Puerto Rico, se limitan solo a la etapa del juicio. Nótese que ahí es donde el Estado tiene que probar los elementos del delito más allá de duda razonable y el momento que llevaría a una determinación de culpabilidad o no de la persona acusada.

Sin duda, **no podemos aseverar que una presunción por el hecho de aplicarse contra el acusado es inválida constitucionalmente, como si todas estas presunciones lo fueran.** Más aún, cuando la inferencia solo se hace en la etapa de vista preliminar. No existe fundamento constitucional para ello, pues, como hemos visto, existen presunciones en procesos criminales, **incluso sobre hechos esenciales del caso**, que se han validado constitucionalmente. Véanse: e.g., *Ulster County Court v. Allen,* supra; *Barnes v. United States*, 412 US 837 (1973); *United States v. Gainey*, 380 US 63 (1965). En el caso de Puerto Rico, véanse, e.g., *Pueblo v. Sánchez Morales,* supra; *Pueblo v. De Jesús Cordero*, supra. Según mencionamos, este análisis se efectuó sobre presunciones aplicadas en la etapa del juicio y no cuando presuntamente se aplicaron en una audiencia de causa probable.[64] Por esta razón

---

[64] De igual manera, no procede que, sin un análisis concreto ni en la etapa propicia, desaparezcamos las presunciones en los procesos criminales. Lo anterior por el mero hecho de que entendamos que el Estado puede presentar cierta prueba para establecer un hecho. Esto obraría en un contrasentido, pues resultaría en que apliquemos una norma más rigurosa que la adoptada por este Tribunal y la jurisprudencia federal al validar presunciones constitucionalmente en los procesos criminales en la etapa del juicio. Ello, en la medida en que si esta recae sobre un elemento del delito, sin importar su naturaleza, sería contraria al debido proceso de ley, a pesar de que el juicio es la etapa realmente crítica y en la cual el debido proceso de ley y los derechos constitucionales aplican en toda su extensión. Ello no se asemejaría en nada a la norma que habíamos adoptado en *Pueblo v. Sánchez Molina,* supra, ni a la doctrina federal,

estamos impedidos de resolver que en la vista preliminar no procede inferir la ilegalidad de la portación del arma. Debemos tener presente que portar un arma es evidencia *prima facie* de que la portación se hace sin licencia ni permiso, así lo hemos reconocido al autorizar a los agentes del orden público a intervenir con una persona y exigirle su licencia, con efecto de validez de la detención y el registro incidental al arresto correspondiente. Ello en el caso de que no muestre la licencia o permiso para poseer o portar el arma de fuego.[65] Así, posteriormente, un juez **puede inferir** razonablemente ⸺por lo menos en el **juicio de probabilidades** que efectúa en la vista preliminar⸺ la ilegalidad de la portación sobre las circunstancias o características que rodean el caso.

## IV

Cabe resaltar que en este caso no existe prueba en el expediente sobre la aplicación arbitraria de esta inferencia **controvertible y permisible**, la cual, en nuestro sistema de derecho, está totalmente justificada. Es importante tomar en consideración que se trata de una etapa en la cual no se hizo una adjudicación en cuanto a la culpabilidad o no del peticionario, sino que se autorizó la presentación de la acusación correspondiente para que el Estado, en efecto,

---

las cuales efectúan un análisis completo de las presunciones a la luz del debido proceso de ley en la etapa del juicio. Asimismo, conllevaría que establezcamos un estándar evidenciario más alto en la etapa de vista preliminar, al punto de que se tenga que probar el caso con prueba directa más allá de duda razonable antes del juicio.

[65] Véase *Pueblo v. Del Río*, supra; Chiesa Aponte, *Tratado de derecho probatorio*, *op. cit.,* pág. 1121.

evidencie la culpabilidad del peticionario más allá de duda razonable. De hecho, no contamos con toda la información que tuvo el juez de instancia para realizar esa inferencia que nos permita evaluar si esta se aplicó arbitrariamente en el caso.[66]

El Tribunal de Primera Instancia no revirtió la carga probatoria al aplicar la presunción en cuestión. Este lo que hizo fue una inferencia permisible que, conforme nuestra jurisprudencia, no contraviene la obligación del Estado de probar la culpabilidad del señor Nieves Cabán más allá de duda razonable. Además, el juez lo que emitió fue una determinación bajo el estándar de probabilidades. Durante el juicio, entonces, es que corresponde al Estado probar más allá de duda razonable la comisión del delito de la forma en que en derecho proceda. En ese momento es que incumbirá evaluar si es válido aplicar esta presunción, en el caso de que el dictamen se sustente en ella.

En vista de todo lo anterior, confirmamos el dictamen recurrido emitido por el Tribunal de Apelaciones que reafirmaba al Tribunal de Primera Instancia.

Se dictará sentencia de conformidad.


                                        Edgardo Rivera García
                                        Juez Asociado

---

[66] Véase *Ulster County v. Allen*, supra, el cual establece que uno de los elementos que pueden hacer inconstitucional una presunción es que, de acuerdo al récord, esta se aplique arbitrariamente o que no exista un nexo racional para hacer tal inferencia. Esto distingue sustancialmente el caso de autos de *Pueblo v. Negrón Nazario,* supra, en el cual, como vimos, las partes presentaron una estipulación de la prueba y el testimonio que tuvo ante sí el foro primario en la audiencia de causa probable.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Kevin J. Nieves Cabán<br><br>Peticionario | CC-2017-0630 |

**SENTENCIA**

En San Juan, Puerto Rico, a 20 de febrero de 2019.

Por los fundamentos antes expuestos, los cuales se hacen formar parte de esta sentencia, confirmamos el dictamen recurrido emitido por el Tribunal de Apelaciones que reafirmaba al Tribunal de Primera Instancia.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez emitió una opinión disidente a la cual se unieron la Jueza Presidenta Oronoz Rodríguez, el Juez Asociado señor Estrella Martínez y el Juez Asociado señor Colón Pérez.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Kevin J. Nieves Cabán<br><br>Peticionario | **Núm.** <u>CC-2017-0630</u> | |

Opinión Disidente emitida por la Juez Asociada señora Rodríguez Rodríguez a la que se unen la Jueza Presidenta Oronoz Rodríguez y los Jueces Asociados señor Estrella Martínez y señor Colón Pérez

San Juan, Puerto Rico, a 20 de febrero de 2019

> The logical fallacy of appealing to ignorance occurs by 'forgetting that absence of evidence is not evidence of absence.' One can't assume that a proposition is true or false just because some information is absent.[67]

Por entender que el Estado no puede descansar en una presunción para establecer uno de los elementos del delito para el cual procura obtener causa probable para acusar, disiento de la Opinión que hoy se certifica. Una mayoría de este Tribunal, sin embargo, estima que, en la etapa de vista preliminar, el Ministerio Público está exento de presentar **<u>cualquier</u>** prueba sobre uno de los elementos del delito;

---

[67] Gerald Lebovits, *Say it Aint So: Leading Logical Fallacies in Legal Argument-Part II*, 88-SEP N.Y. St. B.J. 64 (2016)(citas omitidas).

específicamente, sobre la ausencia de una licencia para portar armas cuando al imputado se le acusa de infringir el Artículo 5.04 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. sec. 458c. Así, pues, y según el razonamiento de una mayoría, la ausencia total de evidencia queda subsanada mediante una presunción que, interesantemente, obliga al juzgador deducir la ausencia de la evidencia necesaria para probar uno de los elementos esenciales del delito imputado.

Considero que la postura que propone el Tribunal de que es posible deducir un hecho sin que se establezca el hecho base del que éste ha de derivar contraviene la propia definición de lo que es una presunción en nuestro ordenamiento probatorio y transgrede los principios más básicos de la lógica formal. Por tal razón, descartaría la presunción sobre la ausencia de una licencia de posesión y/o portación de armas establecida en *Pueblo v. Pacheco*, 78 D.P.R. 24 (1955) y su progenie y exigiría al Ministerio Público presentar **alguna** prueba sobre **todos** los elementos del delito imputado.

## I.

A pesar de que los hechos del caso se resumen en la Opinión mayoritaria, me remito a lo indispensable para evaluar los méritos de la controversia ante nuestra consideración y la solución equivocada avalada por la mayoría.

El 17 de diciembre de 2014, se presentaron denuncias en contra del Sr. Kevin J. Nieves Cabán ("Nieves Cabán" o "peticionario") por el delito grave de asesinato en primer grado, tentativa de asesinato en primer grado e infracciones a los artículos 5.04 y 5.15 de la Ley de Armas de Puerto Rico.

En lo que atañe la controversia ante nuestra consideración, la denuncia por infracción al Artículo 5.04 de la Ley de Armas dispuso lo siguiente:

> El referido imputado de delito Kevin J. Nieves Cabán, allá en o para el 13 de diciembre de 2014 y en Aguada; Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala de Aguadilla, ilegal, voluntaria y criminalmente en común y mutuo acuerdo con OMAR PEREZ TOMASINI, usó, transportó y/o un arma de fuego, una pistola, color negra, con intención de cometer los delitos de Asesinato, Tentativa de asesinato y Artículo 5.15 de la ley de armas.

Durante la vista preliminar, el juez determinó causa probable para acusar por todos los delitos imputados y, consiguientemente, el 13 de octubre de 2015, el Ministerio Público presentó las acusaciones correspondientes. Con relación al delito bajo el Artículo 5.04 de la Ley de Armas, se indicó en la acusación lo siguiente:

> El referido imputado de delito Kevin J. Nieves Cabán, allá en o para el 13 de diciembre de 2014 y en Aguada, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala de Aguadilla, ilegal, voluntaria, y criminalmente en común y mutuo acuerdo con Omar Pérez Tomasini, portaba, conducía y transportaba un arma de fuego cargada, sin tener una licencia de armas, ni el correspondiente permiso para portar armas siendo dicha arma de fuego un arma con la cual puede causar grave daño corporal y la cual se utilizó en la comisión del delito de Asesinato y Infr. Art. 5.15 de la Ley de Armas con la cual se le causó daño físico que le causó la muerte al Sr. Ángel Colón Martínez y se utilizó en la comisión del delito de tentativa de asesinato e Infr, Art. 5.15 de la Ley de armas, con la cual se causó daño físico a Osvaldo Ruiz Rodríguez.

Tras la presentación de la referida acusación, el señor Nieves Cabán presentó ante el Tribunal de Primera Instancia un escrito titulado *Moción de desestimación bajo la Regla 64(I) y 64(P) de Procedimiento Criminal y Debido Proceso de Ley*. En éste, arguyó que, durante la vista preliminar, el Ministerio Público no presentó testimonio o prueba alguna relacionada con la tenencia y portación de un arma de fuego

sin licencia o permiso para ello, lo que constituía un elemento del delito imputado. En apoyo a su solicitud de desestimación, el señor Nieves Cabán también adujo que, dado que el texto de la denuncia presentada en su contra no aludía al elemento relacionado con la tenencia de una licencia para portar armas, era improcedente añadir ese elemento del delito en la acusación presentada en su contra.

En fin, el señor Nieves Cabán sostuvo que el Ministerio Público estaba impedido de presentar una acusación que aludiera al elemento de ausencia de una licencia y/o permiso para portar un arma de fuego cuando no desfiló prueba en cuanto a este elemento del delito en la vista preliminar y tampoco lo incluyó en la denuncia original. Así, amparándose en los incisos (I) y (P) de la Regla 64 de Procedimiento Criminal, el señor Nieves Cabán solicitó la desestimación de la acusación por infracción al Artículo 5.04 de la Ley de Armas o, en la alternativa, que se eliminara ese elemento de la acusación.

El Ministerio Público se opuso a la desestimación solicitada y argumentó que, conforme a la jurisprudencia aplicable, en casos de portación o posesión ilegal de armas de fuego, el fiscal no viene obligado a probar que el acusado carecía de una licencia. Ello, puesto que existe una presunción a esos efectos y corresponde al acusado rebatirla. En cuanto a la discrepancia entre la denuncia y la acusación, el Ministerio Público expresó que en nuestra jurisdicción se ha reconocido que las denuncias que dan lugar al comienzo de la acción penal "no son camisa de fuerza que delimiten el contenido de la acusación que en su momento el Ministerio Público radique contra el imputado del delito". *Contestación*

*a Moción de Desestimación, Apéndice*, en la pág. 55. El Ministerio Público arguyó, pues, que la determinación válida de causa probable en la vista preliminar tuvo el efecto de enmendar o subsanar cualquier error u omisión en la denuncia.

Evaluados los argumentos de las partes, el Tribunal de Primera Instancia declaró no ha lugar la desestimación solicitada por el peticionario. Al así proceder, razonó que cualquier omisión de un elemento del delito que pudo haberse realizado en la denuncia quedó subsanada por su inclusión posterior en la acusación. Sobre el argumento relacionado con la ausencia de prueba sobre la tenencia de una licencia de uso y/o portación de armas, el foro primario concluyó que, dado que tal hecho se había incluido en la acusación, bajo el estado de Derecho vigente, se activaba la presunción de posesión o portación ilegal y correspondía al señor Nieves Cabán derrotarla.

Inconforme con el dictamen del Tribunal de Primera Instancia, el peticionario acudió al Tribunal de Apelaciones mediante un recurso de *certiorari*. En éste, reiteró los argumentos de índole procesal esgrimidos en su solicitud de desestimación al amparo de las Reglas 64(I) y 64(P) de Procedimiento Criminal.

El 4 de febrero de 2016, el foro apelativo intermedio expidió el auto solicitado y ordenó al peticionario y a la Oficina de la Procuradora General presentar alegatos discutiendo lo siguiente: (1) si la presunción de que la portación de un arma es ilegal tiene el efecto de invertir el peso de la prueba del Estado al acusado; (2) si la presunción de ilegalidad en la portación contraviene la Segunda Enmienda de la Constitución federal y afecta el derecho a la presunción

de inocencia; (3) si la obligación del acusado de presentar evidencia demostrativa de que posee una licencia infringe su derecho a guardar silencio, y (4) si la presunción de ilegalidad y la obligación del acusado de presentar evidencia de poseer una licencia para portar armas han sido adoptadas en algún estado de los Estados Unidos.[68]

Presentados los alegatos de las partes, y con el beneficio de la comparecencia de la Sociedad para la Asistencia Legal como *amicus curiae*,[69] el Tribunal de Apelaciones emitió una sentencia mediante la cual revocó el dictamen recurrido y decretó la inconstitucionalidad de la presunción sobre la carencia de una licencia cuando el Ministerio Público prueba el hecho básico de la posesión. A pesar de iniciar su análisis con referencias a la Segunda Enmienda de la Constitución federal, el foro apelativo intermedio concluyó que "[l]a presunción de que toda arma se posee de manera ilegal hasta tanto un acusado produzca una licencia transgrede el derecho a la presunción de inocencia". *Sentencia del TA del 31 de octubre de 2016*, en la pág. 17. Así, decretó la inconstitucionalidad de la presunción de ausencia de licencia establecida jurisprudencialmente.

---

[68] Conviene destacar que estas controversias no fueron planteadas por el peticionario en el auto de *certiorari* incoado ante el Tribunal de Apelaciones. Tampoco fueron objeto de discusión ante el foro primario. Como se reseñó, los argumentos esbozados por el peticionario ante ambos foros se circunscribieron a la procedencia de una desestimación por ausencia de prueba respecto a uno de los elementos del delito y a la corrección de la acusación cuando ese elemento del delito no había sido incluido en la denuncia que dio paso al proceso penal en su contra.

[69] El Tribunal de Apelaciones, *motu proprio*, le extendió una invitación a la Sociedad para la Asistencia Legal y al "*Gun Rights and Safety Association of Puerto Rico*" para que comparecieran en calidad de amigos de la Corte.

Interpelado por el Estado, el Tribunal de Apelaciones posteriormente reconsideró su dictamen y procedió a confirmar la resolución del Tribunal de Primera Instancia mediante la cual se le había denegado al peticionario su moción al amparo de las Reglas 64 (I) y 64 (P) de Procedimiento Criminal. En su sentencia en reconsideración, el Tribunal de Apelaciones determinó que, a nivel de vista preliminar, se podía utilizar la presunción en controversia para establecer uno de los elementos del delito tipificado en el Artículo 5.04 de la Ley de Armas. Amparándose en la doctrina de autolimitación judicial, el foro apelativo intermedio se abstuvo de dirimir el aspecto constitucional de la controversia y dictaminó que el Art. 5.04 de la Ley de Armas establecía una inferencia permisible de posesión no autorizada de un arma de fuego.

De esta manera, el Tribunal de Apelaciones concluyó que, "a nivel de vista preliminar, en la que la responsabilidad penal se establece a base de un cálculo de probabilidades, probado el hecho básico —posesión del arma de fuego— el juzgador de hechos **puede —no tiene que—** inferir el hecho presumido—ausencia de autorización de la posesión". *Sentencia en reconsideración*, en la pág. 6. Aclaró que, debido a que en la etapa de vista preliminar sólo se le requiere al Ministerio Público una *scintilla* de evidencia, es permisible que utilice la presunción sobre ausencia de licencia para establecer uno de los elementos del delito imputado. Específicamente, dispuso que:

> Esta presunción débil, en unión a la prueba de la portación, en la etapa de vista preliminar, permiten al Estado establecer la **probabilidad** de que el delito por violación al Art. 5.04 de la Ley de Armas se cometió y que fue el señor Nieves quien lo cometió.

> Corresponderá al Ministerio Público, en el juicio, probar la infracción al Art. 5.04 de la Ley de Armas **más allá de duda razonable**.

*Id.* (énfasis en original).

Inconforme con ese dictamen, el 24 de julio de 2017, el peticionario acudió a este Tribunal mediante un recurso de *certiorari*.[70] En éste, solicitó que decretáramos la inconstitucionalidad del Artículo 5.04 de la Ley de Armas, en tanto y cuanto éste limitaba "el derecho de los ciudadanos a tener y poseer armas de fuego en contravención a la Segunda Enmienda de la Constitución de los Estados Unidos de América". *Petición de certiorari*, en la pág. 6. Bajo el mismo fundamento, planteó que procedía decretar la inconstitucionalidad del Artículo 5.11 de la Ley de Armas en su totalidad.[71] El peticionario señaló, además, que el

[70] En su recurso, el peticionario planteó los siguientes señalamientos de error:
  1. Erró el Tribunal Apelativo al declarar No Ha Lugar la Moción de Desestimación al amparo de la Regla 64(I) y 64(P) de Procedimiento Criminal.
  2. Erró el Tribunal Apelativo al determinar que el Ministerio Público no viene obligado a probar que el acusado no tiene licencia y/ permiso de portar arma, aún cuando, como en el presente caso, no se imputa ese elemento en la denuncia ni se presenta prueba sobre el mismo en la Vista Preliminar, imponiéndole al acusado el peso de rebatir la presunción establecida en la Ley de Armas.
  3. Erró el Honorable Tribunal Apelativo al declarar la constitucionalidad de la presunción que establece el Artículo 5.11 de la Ley de Armas de que toda arma se posee de manera ilegal hasta tanto un acusado produzca prueba sobre la tenencia o no de licencia para portar la misma, transgrediendo el derecho a la presunción de inocencia.
  4. Erró el Honorable Tribunal Apelativo al no declarar constitucional el Artículo 5.04 de la Ley de Armas, limitando el derecho de los ciudadanos a tener y poseer armas de fuego en contravención a la Segunda Enmienda de la Constitución de los Estados Unidos de América.
[71] Nótese que este articulado establece una serie de presunciones, dentro de las cuales no se encuentra la que está en controversia en este caso. La presunción más similar a la que nos ocupa, según codificada en el Artículo 5.11 de

Tribunal de Apelaciones había errado al determinar que el Ministerio Público no venía obligado a probar que carecía licencia para portar armas; máxime cuando ese elemento del delito ni tan siquiera se había incluido en la denuncia y tenía el efecto de invertir el peso de la prueba.

Al día siguiente, el peticionario presentó una *Moción urgente solicitando auxilio de jurisdicción* y solicitó la paralización de los procedimientos por razón de la proximidad de la celebración del juicio en su fondo y la naturaleza de la controversia planteada. Así las cosas, el 9 de agosto de 2017, emitimos una resolución mediante la cual paralizamos los procedimientos en el Tribunal de Primera Instancia y expedimos el auto solicitado. Evaluados los argumentos esgrimidos por las partes, una mayoría de este Tribunal opina que una presunción es suficiente para establecer un elemento del delito de portación ilegal de un arma de fuego a nivel de vista preliminar.

En el caso particular ante nuestra consideración, el Ministerio Fiscal **no presentó evidencia alguna** sobre el elemento de ilegalidad o ausencia de permiso en la portación. Dicha evidencia pudo haber consistido, por ejemplo, en prueba directa, como lo sería en una certificación negativa del Registro de Armas; o en evidencia circunstancial, como sería el testimonio de un agente que establezca que se le solicitó la licencia al imputado del delito y éste no la produjo o incluso que se le preguntó si poseía licencia y el imputado

la Ley de Armas, versa sobre la presunción de que la persona que porta un arma sin licencia la porta con la intención de cometer un delito. En este caso, como se dijo, al acusado se le imputa una violación al Artículo 5.04 y la presunción que se activa para ese delito es una de portación ilegal, lo que a su vez constituye uno de los elementos del mismo.

indicó que no. Estimo que sólo de esta manera el Ministerio Público podría satisfacer el estándar probatorio que se le exige a nivel de vista preliminar.

Para una mayoría, sin embargo, la **ausencia total** de evidencia sobre uno de los elementos del delito de portación ilegal puede ser subsanada mediante una presunción que se activa una vez se establece la mera posesión del arma de fuego, lo que constituye otro elemento del delito. Contrario a lo que interpreta la mayoría, las presunciones no pueden suplir la ausencia total de evidencia, aún en la etapa de vista preliminar. Después de todo, "en puridad, las presunciones no son evidencia, sino reglas relativas al modo de evaluar la evidencia. Ernesto Chiesa, Sobre la validez constitucional de las presunciones, 14 Rev. Jurídica U. Inter. P.R. 727 (1980).

En ese sentido, al margen de la etapa procesal en la que se encuentre un caso penal, estimo inaceptable eximir al Ministerio Público de presentar **cualquier** evidencia relacionada con un elemento del delito bajo el fundamento de que ese elemento puede ser establecido mediante una presunción que el estándar probatorio a nivel de vista preliminar es menor al requerido en el juicio en su fondo. En el caso particular ante nuestra consideración, surge de los hechos que el Ministerio Público no presentó evidencia alguna relacionada con la ausencia de una licencia para portar un arma durante la vista preliminar. Siendo ello así, incumplió con el estándar probatorio que aplica en una vista preliminar y que exige la presentación de evidencia admisible en el juicio sobre todos los elementos del delito.

**II.**

En nuestro ordenamiento procesal penal, la vista preliminar está regulada por la Regla 23 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 23. Esta Regla instituye un derecho estatutario a una vista para determinar causa probable para acusar a todo imputado de delito grave. En lo atinente a la controversia ante nuestra consideración, el inciso (c) de la referida Regla establece que, "[a]l hacer la determinación de causa probable, el tribunal tomará en cuenta la admisibilidad en el juicio de la evidencia presentada por el Ministerio Público **sobre los elementos del delito** y la conexión de la persona imputada con el delito". 34 LPRA Ap. II, R. 23(c) (énfasis suplido).

En el pasado, al interpretar esta exigencia procesal, hemos determinado que el propósito principal de la vista preliminar es "evitar que una persona sea sometida injustificadamente a los rigores de un proceso penal". *Pueblo v. Rivera Vázquez*, 177 D.P.R. 868, 875 (2010). Cónsono con esto, hemos descrito la vista preliminar como "el umbral del debido proceso de ley". *Pueblo v. Soler*, 163 D.P.R. 180, 192 (2004); *Pueblo v. Vega*, 148 D.P.R. 980, 987 (1999); *Pueblo v. Rodríguez Aponte*, 116 D.P.R. 654, 660 (1985).[72] Esto justifica la exigencia de que, a nivel de vista preliminar, el Ministerio Público establezca la probabilidad de que se ha cometido un delito y que el imputado es quien lo ha cometido. *Pueblo v. Rivera Vázquez,* 177 D.P.R. 868, 875 (2010); Regla 23 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 23. Esto es, la vista preliminar sirve el propósito de "determinar si

---

[72] A esos efectos, hemos dispuesto que los derechos procesales reconocidos al imputado por la Regla 23 de Procedimiento Criminal, supra, han advenido parte integral del debido proceso de ley. *Véase Pueblo v. Ortiz Couvertier*, 132 D.P.R. 883 (1993).

el Estado tiene una adecuada justificación para someter al imputado a juicio". *Pueblo v. Ortiz, Rodríguez,* 149 D.P.R. 363, 374 (1999). Sin duda, consideraciones de debido proceso de ley militan en contra de someter a un ciudadano al rigor de un proceso criminal de forma injustificada y arbitraria. *Pueblo v. Andaluz Méndez,* 143 D.P.R. 656 (1997).

En *Pueblo v. Negrón Nazario*, 191 D.P.R. 720 (2014), este Tribunal, por voz del Juez Asociado que hoy suscribe la Opinión mayoritaria, tuvo la oportunidad de precisar la responsabilidad probatoria del Estado en la vista preliminar justamente en un procedimiento por una infracción al Artículo 5.04 de la Ley de Armas. Allí, luego de repasar extensivamente los principios que gobiernan el proceso de determinación de causa probable para arrestar y nuestra jurisprudencia al respecto, se puntualizó lo siguiente:

> Ahora bien, a pesar de no estar obligado a presentar toda la evidencia de cargo, el Estado debe tener presente dos aspectos al momento de seleccionar qué evidencia ofrecerá durante la vista preliminar. En primer lugar, la prueba ofrecida debe ser una admisible en el juicio, conforme a los parámetros establecidos en nuestras reglas de evidencia. En segundo lugar, la evidencia presentada debe reflejar **cada uno de los elementos del delito imputado** y su conexión con la persona imputada. Acorde con ello, en reiteradas ocasiones hemos expresado que "el Ministerio Público debe presentar evidencia legalmente admisible en un juicio plenario, sobre *todos* los elementos del delito imputado en la denuncia y su conexión con el imputado".

*Pueblo v. Negrón Nazario*, 191 D.P.R. 720, 734 (2014)(énfasis nuestro y en original)(citas omitidas).

Específicamente, en *Pueblo v. Negrón Nazario*, tal y como ocurre en este caso, el imputado del delito de portación sin licencia tipificado en el Artículo 5.04 de la Ley de Armas presentó una moción de desestimación al amparo de la Regla 64(P) de Procedimiento Criminal. Para sustentar su petición, arguyó que el Estado no había presentado prueba sobre uno de

los elementos del delito; a saber, la carencia de una licencia de portación.[73] Así, sostuvo que hubo ausencia total de prueba sobre la portación ilegal del arma de fuego, por lo que procedía la desestimación de la acusación en su contra al amparo del Artículo 5.04 de la Ley de Armas. Según explicó, los testimonios vertidos en la vista preliminar demostraron que éste tenía una licencia o permiso válidamente expedido por la Policía de Puerto Rico para portar su arma de reglamento en todo momento, por lo que no necesitaba una licencia expedida por el Estado.

Al dirimir los méritos de los argumentos esbozados por el señor Negrón Nazario y, en atención a que se trataba de una moción de desestimación al amparo de la Regla 64(P) de Procedimiento Criminal, este Tribunal delimitó la controversia a determinar si la acusación presentada por el delito de portar y usar un arma de fuego sin licencia, según tipificado en el Art. 5.04 de la Ley de Armas, procedía en Derecho. *Id.* en las págs. 756-57. Para ello, se destacó que era indispensable evaluar "si en la vista preliminar el Ministerio Público incumplió su responsabilidad probatoria de presentar evidencia admisible en un juicio sobre *todos* los elementos del referido delito". *Id.* en la pág. 757 (énfasis en original). A esos efectos, se señaló que "el delito de portación ilegal conlleva, **como elemento esencial e imprescindible**, una ausencia de autorización para la correspondiente portación del arma". *Id.* en la pág. 752 (énfasis nuestro).

---

[73] Conviene puntualizar que, en *Pueblo v. Negrón Nazario*, el imputado era un agente de la Policía de Puerto Rico y el arma que éste utilizó en la comisión del mismo fue su arma de reglamento.

Luego de examinar los testimonios presentados durante la vista preliminar,[74] así como los elementos que configuran el delito tipificado en el Artículo 5.04 de la Ley de Armas y las exigencias probatorias aplicables a la vista preliminar, este Tribunal concluyó que "el Ministerio Público falló en presentar *alguna evidencia* relacionada con los elementos específicos del delito de portación y uso de un arma de fuego sin licencia. Siendo así, no hay duda de que hubo ausencia total de prueba durante la determinación de causa probable". *Id.* en la pág. 759 (énfasis en original). Consecuentemente, se ordenó la desestimación de la acusación. *Id.*

En atención a que el imputado en *Pueblo v. Negrón Nazario* era un miembro de la Policía de Puerto Rico y, como tal, estaba autorizado a portar su arma de reglamento, este Tribunal destacó lo siguiente:

> De la evidencia desfilada durante la vista preliminar, lo único que se desprende es que alegadamente el señor Negrón *utilizó* su arma de reglamento —la cual está autorizado a portar en todo lugar y en todo momento— para *apuntar y disparar* contra el vehículo en el que se transportaba el señor Rosado Capeles. Tal conducta, *aunque similar*, no es paralela a los hechos constitutivos del delito que el legislador tipificó mediante el mencionado Art. 5.04.

*Id.* en las págs. 758-59.

Así, se dictaminó que, para que procediera una acusación bajo el Artículo 5.04 de la Ley de Armas, era necesario que se presentara evidencia en la vista preliminar sobre la ausencia de una licencia de portación de armas. Como se indicó, debido a que el Ministerio Público incumplió con esa carga probatoria, lo procedente era desestimar la acusación.

---

[74] En ésta, según se detalló en la Opinión, el Ministerio Público se limitó a presentar el testimonio del perjudicado y de los dos agentes que intervinieron en el incidente.

En lo concerniente al delito tipificado en el Artículo 5.04, se aclaró que, en aquellos casos en que se impute portar un arma de fuego sin licencia para ello, será necesario que el Ministerio Público presente prueba respecto a la ausencia de tal licencia. Concretamente, se estableció que cuando se imputa el delito de portación ilegal o sin licencia:

> [E]l Ministerio Público tiene dos vías para demostrarlo. Primero, podría presentar evidencia de que, en efecto, la persona estaba portando un arma de fuego sin un permiso a tales efectos. En ese caso, la evidencia debe estar dirigida a demostrar la portación del arma **y la ausencia de permiso**. Segundo, podría presentar evidencia de que aun cuando la persona contaba con un permiso de portación, esta no la *portó* según los términos autorizados.

*Id.* en la pág. 757 (énfasis suplido).

A pesar de la perspicuidad de las expresiones que anteceden, la mayoría de los integrantes de este Tribunal reinterpreta y limita sustancialmente el alcance del precedente pautado en *Pueblo v. Negrón Nazario*. Ello, a pesar de aceptar sin ambages que, en ese caso, "reconocimos que la ausencia de autorización para la correspondiente portación del arma era un requisito indispensable para la comisión del delito allí tipificado". Opinión mayoritaria, en la pág. 18. El "delito allí tipificado" es justamente el mismo delito que se le imputa al señor Nieves Cabán. La única diferencia entre el señor Nieves Cabán y el señor Negrón Nazario es que este último era policía y, como tal, contaba con un permiso expedido por esa agencia gubernamental que lo autorizaba a portar un arma de fuego. Es decir, en el caso de *Pueblo v. Negrón Nazario* **sí** se presentó alguna prueba sobre el elemento del delito relacionado con la **ausencia** de un permiso; a saber, el testimonio de un agente que establecía la **existencia** del permiso expedido por la Policía a favor del imputado. Así lo

reconoce la Opinión mayoritaria al afirmar que "según la prueba, esto lo había hecho con un arma que estaba autorizado para portar **en todo lugar y momento**". Opinión mayoritaria, en la pág. 19 (énfasis en original).

Según la mayoría, la existencia de un permiso en *Pueblo v. Negrón Nazario* imposibilitaba que un juez pudiese "inferir, ni siquiera remotamente, que el imputado no tenía la licencia o permiso para portar el arma". *Id.* Ciertamente, la existencia de algo impide su inexistencia. El error del análisis de la mayoría estriba en utilizar ese mismo razonamiento para concluir que la omisión de presentar evidencia respecto a la existencia de algo conlleva presumir su inexistencia. Específicamente, la mayoría opina que la ausencia de evidencia sobre la existencia de una licencia permite a un Juez concluir que la misma es inexistente.[75] En el caso particular ante nuestra consideración, este análisis permite que el hecho base y el hecho presumido conformen los dos elementos del delito. Ello es así porque el delito no está tipificado como la mera posesión, lo que constituye el hecho base, sino la posesión sin licencia para ello. No puede perderse de vista que, la ausencia de licencia, lo que figura como el hecho presumido bajo el razonamiento de la mayoría,

---

[75] Lo que es peor, en su análisis la mayoría utiliza intercambiablemente las palabras "presunción" e "inferencia" -sin adjetivación o calificación ulterior- para concluir que en este caso lo que se hizo fue una "inferencia permisible" sobre la ilegalidad de la portación. *Opinión mayoritaria*, en la pág. 32. Nótese cómo incluso se formula la controversia: "¿Puede el tribunal encontrar causa probable para juicio por violación al Art. 5.04 de la Ley de Armas, infra, al hacer una inferencia o aplicar una presunción de portación ilegal de un arma de fuego"? Entiendo que, como mínimo, la conclusión a la que llega una mayoría requería examinar más a fondo la distinción entre una presunción y una inferencia, especialmente en el ámbito del Derecho Penal.

es un elemento esencial del delito, y como tal, obliga al Ministerio Público a presentar prueba sobre su configuración.

Sin lugar a duda, en *Pueblo v. Negrón Nazario*, este Tribunal estableció que la ausencia de una licencia de portación de armas es un elemento "**esencial e imprescindible**" para que se configure el delito tipificado en el Artículo 5.04 de la Ley de Armas. El dictamen que hoy suscribe una mayoría tiene el efecto de permitirle al Ministerio Público someter a un ciudadano a un procedimiento penal sin que se presente un ápice de evidencia sobre un elemento "esencial e imprescindible" del delito que se le imputa. Al así proceder una mayoría avala que la exigencia de presentar **alguna** prueba sobre todos los elementos del delito durante la vista preliminar ceda ante una presunción jurisprudencial instituida hace más de seis (6) décadas en *Pueblo v. Pacheco*, 78 D.P.R. 24 (1955).

### III.

En *Pueblo v. Pacheco*, este Foro dispuso lo siguiente respecto a la presunción objeto de la controversia ante nuestra consideración:

> En casos de portación o posesión ilegal de armas de fuego el fiscal no viene obligado a probar que el acusado no tenía licencia con tal fin, cuando se ha alegado tal hecho en la acusación y se ha probado la portación o posesión del arma, ya que en ellos surge la presunción de portación o posesión ilegal y es al acusado a quien incumbe destruir tal presunción. Pueblo v. Segarra, 77 D.P.R. 736; Pueblo v. Negrón, 76 D.P.R. 346, en el cual dijimos a la pág. 351 que '...Existe sin embargo otro principio aceptado generalmente por los tribunales americanos al efecto de que no incumbe al fiscal aducir prueba afirmativa para sostener una alegación negativa cuya veracidad queda razonablemente indicada por las circunstancias establecidas y que de ser incierta pueda fácilmente ser contradicha mediante el ofrecimiento de prueba documental o de otra índole que probablemente está en poder del acusado o bajo su dominio.' Era por tanto innecesario considerar cualquier evidencia que el fiscal presentara para

probar que el acusado no tenía licencias para portar o poseer armas de fuego, ya que al propio acusado era a quien correspondía probar que tenía tales licencias. Él no ofreció prueba alguna a ese efecto.

Nótese que el delito tipificado en el Artículo 5.04 de la Ley de Armas vigente dispone que "[t]oda persona que transporte cualquier arma de fuego o parte de ésta, sin tener una licencia de armas, o porte cualquier arma de fuego sin tener su correspondiente permiso para portar armas, incurrirá en delito grave..." 25 L.P.R.A. sec. 458c. De este precepto surge claramente que el delito de portación ilegal requiere, además de la portación de un arma de fuego, la **ausencia de autorización para esa portación**. *Véase Pueblo v. Negrón Nazario,* 191 D.P.R. 720 (2014).

Ciertamente, la presunción de portación ilegal en nuestra jurisdicción se desarrolla en un contexto histórico particular en el que la posibilidad de que un ciudadano común pudiese obtener una licencia de poseer y/o portar un arma de fuego era muy limitada. Tampoco en aquella época existían los avances tecnológicos que, en la actualidad, le permitirían al Estado valerse de una base de datos para identificar a aquellas personas que cuentan con una licencia para poseer y/o portar armas. Ante esa realidad, y tomando en cuenta la evolución jurisprudencial del derecho a poseer y portar armas,[76] estimo que resultaba imperativo revaluar nuestros pronunciamientos previos relacionados con la procedencia y legalidad de utilizar la presunción en controversia para probar un elemento del delito imputado durante un

---

[76] *Véanse District of Columbia v. Heller*, 554 U.S. 570 (2008); *McDonald v. City of Chicago*, 561 U.S. 742 (2010). Esta jurisprudencia expresamente reconoce la facultad de los estados de regular el derecho a portar armas, el cual, como cualquier otro derecho, no es uno absoluto o irrestricto.

procedimiento de vista preliminar. No obstante, la mayoría optó por un *status quo* anacrónico y del todo incongruente con desarrollos legislativos, jurisprudenciales y tecnológicos recientes. Ese *status quo*, aplicado irreflexivamente, convierte una presunción en evidencia y trastoca inadecuadamente el *onus probandi* en los procesos criminales, aún si éstos se encuentran en la etapa temprana de vista preliminar.

La norma que hoy se avala, además, es contraria a nuestras expresiones previas en torno a los rigores y exigencias de la vista preliminar. Específicamente, en el pasado hemos establecido que, durante la vista preliminar "el Ministerio Público debe presentar evidencia, legalmente admisible en un juicio plenario, sobre **todos** los elementos del delito imputado y su conexión con el imputado". *Pueblo v. Andaluz Méndez*, 143 D.P.R. 656, 662 (1992)(énfasis nuestro). Necesariamente, esa *scintilla* de evidencia ha de ser algo más que la mera alegación de la comisión de un delito o una presunción desplazada que tenga el efecto de invertir el *onus probandi* y exigirle al imputado presentar evidencia para establecer que el delito del cual se le intenta acusar no fue cometido. Conviene recordarle a una mayoría que, en nuestro ordenamiento criminal, **"[e]n la etapa de la vista preliminar, el peso de la prueba recae sobre el Ministerio Público"**. *Pueblo en Interés Menor K.J.S.R.*, 172 D.P.R. 490, 498 (2007).

En el presente caso, el Tribunal de Apelaciones concluyó que "en la etapa de vista preliminar, regida por el *quantum* probatorio de *scintilla*, el Estado, en ausencia de prueba que la derrote, puede utilizar la presunción en cuestión para establecer uno de los elementos del delito imputado, a saber,

la ausencia de licencia o permiso para portar el arma de fuego". *Sentencia del Tribunal de Apelaciones*, en la pág. 15. En gran parte, el foro apelativo intermedio fundamentó su proceder en que, aunque se trataba de una presunción débil, era suficiente para permitirle al Estado "establecer la probabilidad de que el delito por violación al Art. 5.04 de la Ley de Armas se cometió y que fue el señor Nieves quien lo cometió". *Id.*

Si bien las presunciones son aceptadas como un mecanismo que exime al proponente de un hecho de presentar prueba sobre su ocurrencia, resulta inconcebible equiparar la aplicabilidad o activación de una presunción con la presentación efectiva de evidencia requerida para probar un elemento de un delito en un procedimiento criminal. Sobre esto, nos comenta el profesor Chiesa que "[e]n puridad, las presunciones no son evidencia, sino reglas relativas al modo de evaluar la evidencia". Ernesto L. Chiesa, *Sobre la validez constitucional de las presunciones*, en la pág. 727. Por lo tanto, explica que "el debido procedimiento de ley – independientemente del asunto de la conexión racional entre hecho básico y hecho presumido- exige que la presunción no tenga un efecto indebido contra el acusado, en violación a su presunción de inocencia y a su derecho a que el ministerio público establezca **todos los elementos del delito** más allá de duda razonable". *Id.* en la pág. 746 (énfasis suplido). *Véanse además Pueblo v. Sánchez Molina*, 134 D.P.R. 577 (1993); *Yates v. Aiken*, 484 U.S. 211 (1988); *Ulster County Court v. Allen*, 442 U.S. 140, 156 (1978); *Mulaney v. Wilbur*, 421 U.S. 684,703- 704 (1974).

Por último, resulta preciso puntualizar que, en lo que atañe el efecto de las presunciones en casos criminales, nuestras Reglas de Evidencia diáfanamente disponen que una presunción "no tendrá efecto alguno de variar el peso de la prueba sobre los elementos del delito o de refutar una defensa de la persona acusada". 32 L.P.R.A. Ap. VI, R. 303. Así, tanto a nivel estatal como a nivel federal, se ha determinado que cuando una presunción requiere que el juzgador infiera elementos del delito de manera concluyente, ésta atenta contra la presunción de inocencia y, por tanto, es inconstitucional. *Véase Pueblo v. Sánchez Molina*, *supra* en la pág. 587, y casos federales allí citados.

## IV.

En el caso ante nuestra consideración, la única evidencia que presentó el Ministerio Público para obtener una determinación de causa probable para acusar bajo el Artículo 5.04 de la Ley de Armas fue el testimonio del agente relacionado con la tenencia física del arma de fuego por parte del peticionario; esto es, la mera posesión. A juicio del foro primario, ese testimonio fue suficiente para activar la presunción sobre la ilegalidad de la tenencia y, de esta manera, encontrar probados todos los elementos del delito de portación ilegal tipificado en el referido artículo. En su solicitud de desestimación al amparo de la Regla 64 (P) de Procedimiento Criminal presentada ante el Tribunal de Primera Instancia, el peticionario adujo a la ausencia total de prueba relacionada al elemento del delito sobre la falta de licencia para portar el arma. En atención a que no se presentó prueba

alguna sobre la ausencia de licencia para la portación, lo correcto era desestimar la acusación bajo el fundamento de ausencia total de prueba sobre uno de los elementos del delito. Veamos.

La Regla 64 (P) provee un remedio a un imputado de delito que alega que en la vista preliminar el Ministerio Público no satisfizo o incumplió con el *quantum* de prueba requerido. *Pueblo v. Rivera Cuevas,* 181 D.P.R. 699 (2011); *Pueblo v. Kelvin Branch,* 154 D.P.R. 575, 584 (2001); *Pueblo v. Rivera Rodríguez,* 150 D.P.R. 428 (2000); *Pueblo v. Andaluz Méndez,* 143 D.P.R. 656 (1997); *Pueblo v. González Pagán,* 120 D.P.R. 684 (1988). Específicamente, la Regla dispone lo siguiente como fundamento para la desestimación de una causa criminal:"[q]ue se ha presentado contra el acusado una acusación o denuncia, o algún cargo de las mismas, sin que se hubiere determinado causa probable por un magistrado u ordenado su detención para responder del delito, con arreglo a la ley y al derecho. 34 L.P.R.A. Ap. II, R. 64(p).

Al evaluar una moción de desestimación bajo esta regla, el elemento primordial a considerarse es si existe o no ausencia total de prueba que tienda a demostrar que se ha cometido el delito imputado y que el acusado lo cometió. *Pueblo v. Rivera Cuevas, supra; Pueblo v. Rivera Rivera,* 141 D.P.R. 121, 131 (1996); *Pueblo v. Rodríguez Ríos,* 136 D.P.R. 685, 692 (1994). Cónsono con esto, en repetidas instancias hemos afirmado que procede la desestimación de una acusación al amparo de la Regla 64 (P) de Procedimiento Criminal **solamente en total ausencia de prueba sobre la probabilidad de que estén presentes uno, varios o todos los elementos del delito o de la conexión del**

**imputado con tal delito.** *Pueblo v. Rivera Cuevas, supra; Pueblo v. Rivera Alicea,* 125 D.P.R. 37, 42-43 (1989).

Irremisiblemente, pues, la ausencia total de prueba sobre uno de los elementos consustanciales del delito imputado exige la desestimación de la acusación. Este ejercicio evaluativo ha de dar cuenta de una de las razones principales que inspiran la vista preliminar: proteger a la persona imputada a través de un filtro o cedazo judicial por el cual el Estado tiene que pasar prueba, y demostrar si está justificado o no a intervenir con la libertad de un ciudadano y someterlo a los rigores y contingencias de un juicio plenario. Véase *Pueblo v. González Pagán,* 120 D.P.R. 684, 688 (1988).

En el contexto particular del caso ante nuestra consideración, lo decidido por este Tribunal en *Pueblo v. Negrón Nazario*, 191 D.P.R. 720 (2014) despeja cualquier duda respecto a la obligación del Estado de presentar evidencia sobre la ausencia de una licencia al momento de encausar a un ciudadano por el delito que se tipifica en el Artículo 5.04 de la Ley de Armas. Lo contrario implicaría eludir las exigencias del debido proceso de ley y someter a un acusado de delito a los rigores de un juicio criminal sin que se haya presentado evidencia alguna sobre un elemento consustancial del delito que se le imputa.

La naturaleza y el propósito de la vista preliminar, así como nuestras determinaciones previas, dejan claro que, aún en la etapa de vista preliminar, el Estado está obligado a presentar **alguna** prueba sobre **todos** los elementos del delito imputado. Someter a un acusado a los rigores de un juicio en su fondo por un delito para el cuál **no se presentó prueba**

**alguna** respecto a uno de sus elementos consustanciales transgrede los principios más básicos del debido procedimiento de ley.

## V.

Por entender que el Tribunal de Apelaciones erró al concluir que una presunción "débil" puede sustituir evidencia directa o indirecta sobre uno de los elementos del delito imputado, disiento del dictamen que hoy suscribe una mayoría. Consecuentemente, revocaría el dictamen del Tribunal de Apelaciones y desestimaría la acusación en contra del Sr. Kevin Nieves Cabán por el delito de portación y uso de un arma de fuego sin licencia, según tipificado en el Artículo 5.04 de la Ley de Armas.

Bajo ningún concepto, la ausencia total de evidencia puede servir para probar una ausencia ("absence of evidence is not evidence of absence.") Si bien probar un negativo supone un reto en cualquier contexto, presumir la ocurrencia de un hecho porque se carezca de información sobre su no-ocurrencia constituye un ejercicio adjudicativo irresponsable y peligroso. Porque la existencia de uno de los elementos de un delito no debe ser evaluada en función de un "juicio de probabilidades" en ninguna etapa del procedimiento penal, disiento.

Anabelle Rodríguez Rodríguez
Juez Asociada